# EXHIBIT A



# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Abigail Quinio<br>Genuine Financial Holdings<br>3349 Michelson Dr<br>Ste 150<br>Irvine, CA 92612-8881 |
| **Electronic copy provided to:** | Chris Lemens<br>Brian Copple<br>Gregg Freeman<br>Stephanie Morgan |

| | |
|---|---|
| **Entity:** | General Information Solutions LLC<br>Entity ID Number  3886804 |
| **Entity Served:** | General Information Solutions, LLC |
| **Title of Action:** | Victor J. Fredericks vs. Black Knight Security Inc. |
| **Document(s) Type:** | Notice and Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Allegheny County Court of Common Pleas, PA |
| **Case/Reference No:** | GD-21-001532 |
| **Jurisdiction Served:** | South Carolina |
| **Date Served on CSC:** | 03/25/2021 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Angeli Murthy<br>954-318-0268 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

NOTICE OF SUIT TO SHERIFF OF ALLEGHENY CO.

You are hereby notified that on <u>02/24/2021</u>

a COMPLAINT has been filed in this case

and you are required to serve the same on or before the

<u>05/25/2021</u>

Michael McGeever, Director

Department of Court Records

## COMPLAINT IN CIVIL ACTION

### IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

| Plaintiff(s)<br><br>   **Fredericks, Victor J.** | Case Number:<br>**GD-21-001532**<br><br>Type of pleading:<br>**Complaint**<br><br>Filed on behalf of:<br>**Fredericks J. Victor**<br><br>**Murthy Angeli**<br>(Name of filing party) |
|---|---|
| Defendant(s)<br><br>   **Black Knight Security Inc.,**<br><br>   **General Information Solutions LLC,** | VS<br>[X]   Counsel of Record<br><br>[ ]   Individual, If Pro Se<br><br>Name, Address and Telephone Number:<br>**Murthy Angeli**<br>**8151 Peters Road**<br>**4th Floor**<br>**Plantation, FL, 33324**<br>**954 3180268**<br>Attorney's State ID: 93699 |

**Michael McGeever, Director, Department of Court Records**

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY
PENNSYLVANIA**

**COVER SHEET**

| | |
|---|---|
| VICTOR J. FREDERICKS, *on behalf of himself and all other similarly situated individuals,*<br><br>     Plaintiff,<br><br>     vs.<br><br>BLACK KNIGHT SECURITY, INC., and <u>GENERAL INFORMATION</u> <u>SOLUTIONS, LLC,</u>  *Svr R*<br><br>     Defendants. | CIVIL DIVISION<br><br>No.: GD- _____<br><br>**CLASS ACTION COMPLAINT**<br><br>Code_____<br><br>*FILED ON BEHALF OF:*<br><br>Plaintiff<br><br>     COUNSEL OF RECORD FOR<br>THIS PARTY:<br><br>*ANGELI MURTHY, ESQ.*<br>(PA Bar No. 93699)<br>MORGAN & MORGAN, P.A.<br>8151 Peters Rd., 4th Floor<br>Plantation, Florida 33324<br>Telephone: (954) 318-0268<br>Facsimile: (954) 327-3016<br>Amurthy@forthepeople.com<br><br><br>*JURY TRIAL DEMANDED* |

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY**
**PENNSYLVANIA**

| | |
|---|---|
| VICTOR J. FREDERICKS, | ) |
| | ) |
| *On behalf of himself and all* | ) |
| *similarly situated individuals,* | ) |
| | )   **CIVIL ACTION NO:** |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) |
| BLACK KNIGHT SECURITY, INC., and | ) |
| GENERAL INFORMATION | ) |
| SOLUTIONS, LLC | ) |
| | )   **Class Action** |
| **Defendants.** | ) |

## NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the *court without further notice for any money claimed in the complaint or for any other claim or* relief requested by the plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE OR KNOW A LAWYER, THEN YOU SHOULD GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.**

<div align="center">

LAWYER REFERRAL SERVICE
The Allegheny County Bar Association
400 Koppers Building, 436 Seventh Ave.
Pittsburgh, PA 15219
(412) 261-6161

</div>

2

**IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY PENNSYLVANIA**

| | | |
|---|---|---|
| VICTOR J. FREDERICKS, | ) | |
| | ) | |
| *On behalf of himself and all* | ) | |
| *similarly situated individuals,* | ) | |
| | ) | **CIVIL ACTION NO:** |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| BLACK KNIGHT SECURITY, INC., and | ) | |
| GENERAL INFORMATION | ) | |
| SOLUTIONS, LLC, | ) | |
| | ) | **Class Action** |
| **Defendants.** | ) | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Victor J. Fredricks, for himself and on behalf of all others similarly situated, and for his Class Action Complaint against Defendants Black Knight Security, Inc. ("Black Knight") and General Information Solutions, LLC ("GIS") (collectively, "Defendants"), alleges as follows:

## STATEMENT OF THE CASE

1.      Fifty years ago, Congress enacted the Fair Credit Reporting Act ("FCRA") to ensure the protection of consumer privacy, to enable consumers to maintain control over their personal information, and to prohibit consumer reporting agencies from recklessly disseminating consumers' most private, sensitive information.

2.      Recognizing the impact consumer reports can have on all aspects of life, including employment, Congress created strict guidelines consumer reporting agencies must follow before releasing a consumer report for employment purposes to ensure consumers are properly notified of their rights and the content of their consumer reports.   When consumer

3

reporting agencies ignore their statutory obligations, consumers are deprived of the opportunity to decide who accesses their personal information, learn what is being reported about them, address any inaccuracies or even explain what is being reported.

3.      Similarly, Congress created strict requirements for employers using consumer reports for employment purposes to ensure consumers are notified their consumer reports are being used for employment purposes; who is obtaining their consumer reports; and if their consumer reports are being used, in whole or in part, to take adverse action against them.

4.      If a consumer report is being used, in whole or in part, to take adverse employment action against a consumer, Congress requires employers to provide consumers with both notice and a copy of the consumer report before the decision to take adverse action is finalized.

5.      In this action, Victor Fredericks, by and through his attorneys, and on behalf of himself and the putative classes set forth below, seeks to hold an employer, Black Knight, and a consumer reporting agency, GIS, accountable, and brings the following Class Action Complaint against Defendants including their related entities, subsidiaries, predecessors and successors, under the FCRA, 15 U.S.C. §§ 1681a–x.

6.      Defendant Black Knight is an employer and user of consumer reports for employment purposes.   Defendant GIS is a consumer reporting agency ("CRA") under the FCRA, providing employers with consumer reports, commonly referred to as "background checks," for employment purposes.   Employers rely on these reports to make employment-related decisions on applicants and employees.

7.      The FCRA makes accessing employment-purpose background checks by anyone presumptively illegal.   To access and use background checks, employers like Black Knight must

4

abide by strict disclosure and notice requirements imposed by the statutes, and must—before they may obtain a report in the first place—certify to the CRA that they have (as to disclosure) and will (regarding notice) abide by these requirements. *See* 15 U.S.C. § 1681b(b)(2), (3).

8.      The FCRA also makes it presumptively illegal for a CRA like GIS to issue a report in the employment context. A CRA may issue such a report "only if" it first obtains from the person to whom it plans to issue the report the certification described in the preceding paragraph.

9.      These requirements must be met as to each report a CRA issues—blanket or prospective certifications of compliance by the users of reports are not permitted.

10.     The failure to meet these certification rules means the agency is forbidden from issuing reports in the employment context. If the agency issues a report without the certifications, it violates the law with each report it so issues.

11.     Obtaining the certification is not everything that a CRA must do to issue a report. If the CRA is reporting public record information likely to have an adverse effect upon a consumer's ability to obtain employment, the CRA must either, 1) notify the consumer of the fact the information is being reported and to whom the information is being reported, or 2) maintain strict procedures to ensure any public record information is complete and up to date. 15 U.S.C. § 1681k.

12.     Non-party Paycom Software, Inc. ("Paycom") provides its client-employers a "Human Capital Management Solution" to manage "the entire employment life cycle," including talent acquisition, timekeeping, talent management, and payroll. As part of its talent acquisition solution, Paycom provides a mechanism for employers to order consumer reports for

employment purposes. Importantly, Paycom does not make hiring or firing decisions for its employer-clients or otherwise use consumer reports obtained by its employer-clients.

13. Black Knight Security is a security service, providing security guards to clients in various states. Black Knight was a Paycom employer-client and used Paycom's solution to obtain consumer reports for employment purposes.

14. Paycom and GIS had a relationship wherein pursuant to an agreement between GIS and Paycom, Paycom's clients, *i.e.* employers like Black Knight, used the Paycom-branded solution to obtain consumer reports for employment purposes.

15. Discovery will show that, GIS had similar relationships with other entities.

16. The FCRA, 15 U.S.C. § 1681b, makes it presumptively unlawful to obtain and use a "consumer report" for an employment purpose. Such use becomes lawful if and only if the consumer reporting agency and user of the consumer report have complied with the statute's strict certification, disclosure, authorization, and notice requirements. 15 U.S.C. § 1681b(a).

17. GIS willfully violated these requirements, in systematic violation of Plaintiff's rights and the rights of other putative class members.

18. GIS violated 15 U.S.C. § 1681b(b)(1)(A)(i)–(ii) by providing consumer reports used for employment purposes without certification from Paycom's clients that they would abide by the FCRA's disclosure, authorization, and notice requirements set forth in 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) and § 1681b(b)(3).

19. Based on the foregoing violations, Plaintiff asserts FCRA claims against GIS on behalf of himself and a class consisting of consumers whose consumer reports were furnished by GIS without certification that the user would comply with the FCRA's strict disclosure, authorization, and notice requirements.

6

20.     In Count I Plaintiff asserts a FCRA claim against GIS under 15 U.S.C. §§ 1681b(b)(1)(A)(i)-(ii) on behalf of a "FCRA Certification Class" consisting of:

**All employees and job applicants in the United States who were the subject of a consumer report furnished by GIS that was provided without the user's certification of compliance with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3), within five years of the filing of this lawsuit through the date of final judgment in this action.**

21.     On behalf of himself and the putative class, Plaintiff seeks statutory damages, costs and attorneys' fees, equitable relief, and other appropriate relief under the FCRA.

22.     To use a consumer report for employment purposes, a user like Black Knight must comply with the statute's strict disclosure and authorization requirements. 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii).

23.     Pursuant to 15 U.S.C. § 1681b(b)(2)(A)(i), the disclosure must be a clear and conspicuous disclosure, in a document consisting solely of the disclosure. Without a clear and conspicuous disclosure, there can be no lawful authorization to obtain a consumer report.

24.     In Count II, Plaintiff asserts a FCRA claim against Black Knight pursuant to 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) on behalf of a "Background Check Class" consisting of:

**All employees and job applicants in the United States upon whom Black Knight Security procured a consumer report without first providing a clear and conspicuous disclosure in a document consisting solely of the disclosure, within two years of the filing of this lawsuit through the date of final judgment in this action.**

25.     Another requirement for employers to use consumer reports for employment purposes is that employers like Black Knight, before using consumer reports to make an adverse employment decision must provide the applicant or employee with notice and a copy of their report.

7

26.     Black Knight violated 15 U.S.C. § 1681b(b)(3)(A) by taking adverse employment action against Plaintiff and other putative class members without first providing Plaintiff and other affected class members notice, a copy of their consumer report, and a summary of their FCRA rights.

27.     In Count III, Plaintiff asserts a FCRA claim against Black Knight pursuant to 15 U.S.C. § 1681b(b)(3)(A)(i) on behalf of an "Adverse Action Class" consisting of:

> **All employees and job applicants in the United States whom Black Knight Security denied employment based in whole or in part on their consumer reports but to whom Black Knight Security did not provide a copy of their consumer report before taking the adverse action, within five years of the filing of this lawsuit through the date of final judgment in this action.**

## THE PARTIES

28.     Individual and class representative Victor Fredricks lives in Chicago, Illinois. Plaintiff applied employed for employment with Black Knight Security in Chicago but was rejected for employment based upon the contents of his consumer report.  GIS created that report and supplied it to Black Knight.

29.     Plaintiff is a member of the putative classes defined above.

30.     Black Knight is a resident of Allegheny County, having its corporate headquarters here. Black Knight is a user of consumer reports as defined in the FCRA.

31.     GIS is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f), and provides consumer reports for employment purposes.

32.     GIS provided a consumer report about Plaintiff to Plaintiff's potential employer, Black Knight.

## JURISDICTION AND VENUE

33.     The Court has jurisdiction under the FCRA, 15 U.S.C. §§ 1681n and 1681p.

8

34.     The Courts of Common Pleas of this Commonwealth are endowed with full authority as provided by law, which extends to causes of action arising under federal law. 42 P.S. § 931.

35.     The Court has personal jurisdiction over Defendants, as Black Knight requested Plaintiff's consumer report from GIS from its headquarters in Allegheny County, and GIS furnished the report for use in Allegheny County.

36.     Venue in this Court is proper under Pa. R. Civ. P. 1006 and 2179 because Defendants regularly conduct business in Allegheny County. Black Knight maintains its principal place of business in the Pittsburgh area and the conduct complained of herein occurred in Allegheny County.

37.     This Court has subject-matter jurisdiction over Plaintiff's FCRA claims because the FCRA provides concurrent jurisdiction to state courts.  15 U.S.C. § 1681p.

38.     The Court has personal jurisdiction over Defendants because Black Knight Security is headquartered in this jurisdiction.

### ALLEGATIONS REGARDING DEFENDANTS' BUSINESS PRACTICES

39.     Congress has recognized consumer reporting agencies like GIS have assumed a vital role in assembling information on consumers, and therefore implemented the FCRA to ensure credit reporting agencies "exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

40.     In accordance with Congress's findings, a consumer reporting agency may only furnish a consumer report for employment purposes if the user has certified its compliance with 15 U.S.C. § 1681b(b)(2)(A) before the report is furnished and certifies future compliance with 15 U.S.C. § 1681b(b)(3), if applicable. 15 U.S.C. §§ 1681b(b)(1)(A)(i)–(ii).

9

41.     The certification requirement reads, in pertinent part:

(1) **Certification from user** A consumer reporting agency may furnish a consumer report for employment purposes *only if* —

(A) the person who obtains such report from the agency certifies to the agency that —

(i) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable.

*15 U.S.C. § 1681b(b)(1)(A)(i) (italics added).*

### *FCRA Violations Relating to Certification Class*

42.     A CRA that furnishes consumer reports used for employment purposes without receiving the requisite certification of FCRA compliance from the person obtaining the report is furnishing the consumer report unlawfully. 15 U.S.C. §§ 1681b(b)(1)(A)(i)–(ii).

43.     GIS furnished consumer reports to Paycom, with knowledge Paycom's employer/clients like Black Knight, not Paycom itself, would use such consumer reports for employment purposes. However, GIS furnished the consumer reports through an electronic application to Paycom's clients, without requiring Paycom's clients, who were actually obtaining and using the consumer reports, to certify compliance with 15 U.S.C. § 1681b(b)(2)(A) before furnishing the report or certifying future compliance with 15 U.S.C. § 1681b(b)(3), if applicable.

44.     GIS similarly furnished consumer reports to other employers who were obtaining and using the consumer reports for employment purposes, without requiring them to certify compliance with 15 U.S.C. § 1681b(b)(2)(A) before furnishing the report or certifying future compliance with 15 U.S.C. § 1681b(b)(3), if applicable.

45.     The paragraphs referenced in § 1681b(b)(1)(A)(i) are the standalone disclosure, written authorization, and pre-adverse action notification requirements set forth in § 1681b(b)(2) and § 1681b(b)(3).

46.     The purpose of the certification requirement is to ensure users of consumer reports for employment purposes follow the statutory framework Congress created to safeguard consumers' rights to privacy and information.

47.     It is flatly illegal for a consumer reporting agency to furnish a consumer report for employment purposes unless the consumer reporting agency has received the FCRA-mandated certification of compliance from the user.  In fact, compliance with the certification requirement provides the only lawful means for a consumer reporting agency to furnish a consumer report for employment purposes. 15 U.S.C. § 1681b(a).

### *FCRA Violations Relating to Background Check Class*

48.     Under the FCRA, it is unlawful to procure a consumer report or cause a consumer report to be procured for employment purposes, unless:

> (i)     *a clear and conspicuous disclosure* has been made in writing to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for employment purposes; and

> (ii)    the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report *by that person.*

15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii) (*emphasis added*).

49.     Because GIS did not require Black Knight to certify compliance with 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii), Black Knight failed to satisfy these disclosure and authorization requirements.

50.     Black Knight did not provide consumers a clear and conspicuous disclosure before procuring consumer reports. In fact, the purported disclosure was not clear because it contained language that a reasonable person would not understand. The purported disclosure was not conspicuous because it was obfuscated by unnecessary information.

51.     Black Knight's FCRA disclosure violates the Act in multiple respects. The FCRA requires that a disclosure not contain extraneous information. This is commonly referred to as the "standalone disclosure" requirement. Black Knight's purported FCRA disclosure contained extraneous information.

52.     The extraneous information was distracting, taking consumers' attention away from the purported disclosure.

53.     The extraneous information was misleading. For example, the purported disclosure led applicants to believe Black Knight Security (not a CRA) was conducting the background check.

54.     The extraneous information included an illegal waiver of liability and release of claims that led applicants to believe that they were required to waive their legal rights if they wished to pursue employment with Black Knight.

55.     Providing notice to consumers is a critical component of the FCRA, as the FCRA also contains several other notice provisions.[1]

56.     The purpose of FCRA notice provisions, including § 1681b(b)(2)(A)(i), is to put consumers on notice that a consumer report may be prepared. This gives consumers the opportunity to exercise substantive rights conferred by the FCRA or other statutes, allowing

---

[1] Such provisions include: 15 U.S.C. § 1681b(b)(3)(A) (pre-adverse action); § 1681b(4)(B)(notice of national security investigation); § 1681c(h) (notification of address discrepancy); § 1681g (full file disclosure to consumers); § 1681k(a)(1) (disclosure regarding use of public record information); § 1681h (form and conditions of disclosure; and § 1681m(a) (notice of adverse action).

consumers the opportunity to ensure accuracy, confidentiality and fairness in the use of their personal, private information.

57.     Without clear notice that a consumer report is going to be procured, applicants and employees are deprived of the opportunity to make informed decisions or otherwise assert protected rights.

58.     Using a FCRA disclosure that is not "standalone" violates the plain language of the statute and consumers' federally protected rights.

59.     Black Knight knowingly and recklessly disregarded case law and regulatory guidance and willfully violated 15 U.S.C. § 1681b(b)(2)(A) by procuring consumer report information on consumers without complying with the disclosure and authorization requirements of the statute. Defendant's violations were willful because Defendant knew it was required to use a stand-alone disclosure form prior to obtaining and using a consumer report on the putative class members.

60.     Black Knight's conduct is also willful because:

    a.      Black Knight is a large and sophisticated employer with access to legal advice through its own attorneys and there is no evidence it determined its own conduct was lawful;

    b.      Black Knight knew or had reason to know that its conduct was inconsistent with published FCRA guidance interpreting the FCRA, caselaw and the plain language of the statute; and

    c.      Black Knight voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

61.     Black Knight acted in a deliberate or reckless disregard of its obligations and the rights of Plaintiff and other Background Check Class members. Black Knight knew or should have known about its legal obligations under the FCRA, as it attempted, but failed, to meet its obligations under Section 1681b(b)(2). These obligations have been in place for decades, giving

13

Black Knight many years to bring itself into compliance. Black Knight had access to materials and resources advising it of its duties under the FCRA.

### *FCRA Violations Relating to Adverse Action Class*

62.     The FCRA also provides that "in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates . . . a copy of the report[.]" 15 U.S.C. § 1681b(b)(3)(A)(i).

63.     Black Knight typically does not provide consumers with notice, a copy of their consumer report and summary of rights, before taking adverse action against them based on the information in such reports.

64.     Commonly known as the pre-adverse action notification requirement, 15 U.S.C. § 1681b(b)(3)(A), requires that all employers who use consumer reports provide a copy of the report to the affected consumer before any adverse action is taken. Employers must comply with this provision even where the information contained in the report (such as a criminal record) would automatically disqualify the individual from employment or lead to an adverse employment action.

65.     By failing to provide Plaintiff and other putative class members with the information required by 15 U.S.C. § 1681b(b)(3)(A) before taking adverse employment action against them based on the information contained in such reports, Black Knight willfully disregarded this unambiguous regulatory guidance as well as the plain language of the statute, in violation of 15 U.S.C. § 1681b(b)(3)(A).

14

## ALLEGATIONS SPECIFIC TO PLAINTIFF

66.    Black Knight was an employer-client of Paycom but made its own hiring and firing decisions.

67.    As part of its hiring process, Black Knight required Plaintiff to sign documents titled *Background and Reference Check Authorization,* purportedly authorizing Black Knight to procure his consumer report for employment purposes.

68.    The *Background and Reference Check Authorization* was presumably intended to serve as Black Knight's FCRA disclosure. However, the document was confusing and led Plaintiff to believe Black Knight was itself conducting the background check. Plaintiff had no basis for knowing GIS was compiling his sensitive, personal information and providing it to Black Knight for employment purposes.

69.    Plaintiff was distracted from the purported FCRA disclosure by the presence of extraneous information.

70.    Additionally, the *Background and Reference Check Authorization* contained an impermissible liability waiver, which led Plaintiff to believe he had released Black Knight and anyone else from liability related to his background check.

71.    Had Plaintiff known that Black Knight and GIS would violate the law in obtaining and using his background check, he never would have signed the authorization documents.

72.    And because GIS never obtained Black Knight's certification of compliance with § 1681b(b)(2), GIS was not aware of any purported authorization from Plaintiff to issue his report to Black Knight at the time it did so.

73.    On January 29, 2020 Black Knight used Paycom's solution to obtain Plaintiff's consumer report from GIS.  However, Black Knight never certified compliance with 15 U.S.C. § 1681b(b)(2)(A) or § 1681b(b)(3) before obtaining Plaintiff's consumer report from GIS.

74.    GIS furnished the consumer report to Black Knight even though Black Knight had never certified compliance with 15 U.S.C. § 1681b(b)(2)(A) before obtaining the report or that it would comply with § 1681b(b)(3), if ever applicable.

75.    Despite having none of the requisite certifications of FCRA compliance, GIS still furnished Black Knight with hundreds of consumer reports, including that of Plaintiff, that were being used for employment purposes.

76.    Moreover, Black Knight could not have possibly certified compliance with § 1681b(b)(2)(A) because the *Background and Reference Check Authorization* form executed by Plaintiff did not satisfy the requirements of §§ 1681b(b)(2)(A)(i)-(ii). Thus, the purported disclosure was also unlawful.

77.    Because Black Knight's disclosure violated the FCRA, it never obtained a lawful, written authorization from Plaintiff to obtain a consumer report about him.

78.    Black Knight obtained Plaintiff's consumer report from GIS and used the report for employment purposes.

79.    Shortly thereafter, Black Knight rejected Plaintiff for employment based upon the consumer report GIS unlawfully furnished to Black Knight. However, Plaintiff was never provided pre-adverse action notification pursuant to § 1681b(b)(3), most likely because Black Knight never certified to GIS it would provide such notification, if applicable, before obtaining Plaintiff's consumer report.

80.    In other words, Plaintiff was denied employment, was not provided with the proper notice so that he would have been apprised of his rights to dispute any information in the consumer report or to otherwise discuss the information in the report before Black Knight rejected him, and had his consumer report improperly accessed because GIS failed to obtain the appropriate certifications from Black Knight.  Such failure also caused an invasion of Plaintiff's privacy, as GIS released his consumer report to Black Knight without having a statutory basis for doing so.

## PLAINTIFF'S CONCRETE HARM CAUSED BY GIS

81.    GIS unjustly enriched itself by unlawfully compiling Plaintiff's personal, private and sensitive information and selling it without a permissible purpose.  The injury of "unjust enrichment" has its roots in English common law.  Causes of action for unjust enrichment were part of "the traditional concern of the Courts at Westminster." *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 US 765, 774 (2000) (quoting *Coleman v. Miller*, 307 U.S. 433, 460 (1939)).

82.    GIS also invaded Plaintiff's privacy by compiling his personal, private and sensitive information into a consumer report and furnishing it to a third party, Black Knight, without a permissible purpose, since GIS did not have the requisite certifications from Black Knight.

83.    The FCRA's protections regarding who may obtain consumer reports and under what circumstances they may do so are real and substantive, not merely procedural.  The violation alleged here is not some mere technical requirement—without the certification from Black Knight, GIS had no statutory permission to provide Black Knight with a report about Plaintiff.

17

84.     This improper issuance of a report harmed Plaintiff by invading his privacy—GIS released Plaintiff's private, personal information to Black Knight without a lawful reason for doing so.

85.     Protection of consumer privacy is one well-recognized aspect of the FCRA, and the statutory provisions violated here have been part of the FCRA since its enactment in 1970.

86.     Plaintiff and the putative class members have a common-law right to keep their personal information from being distributed and used unlawfully. Congress sought to enhance the protection of that right by enacting the FCRA and incorporating many consumer-oriented safeguards, which restrict the distribution of consumer reports only for the reasons listed "and no other." Indeed, the FCRA preempts the common-law tort of intrusion upon seclusion, and the FCRA expresses Congress's finding of "a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and a respect for the consumer's right to privacy." 15 U.S.C. § 1681a(4).

87.     GIS invaded Plaintiff's and the putative class members' right to privacy when it released their highly confidential personal information without a statutory basis for doing so.

88.     GIS's failure to obtain the appropriate authorizations from Black Knight injured Plaintiff in that (1) his privacy was unlawfully invaded by GIS's provision of background reports about him without statutory permission; (2) Plaintiff suffered an informational injury—by not obtaining a proper disclosure of Black Knight's intent to obtain his consumer report for employment purposes—because GIS did not itself obtain the appropriate certification from Black Knight, that it would comply with the disclosure requirement of § 1681b(b)(2); (3) Plaintiff was deprived of his ability to contest or discuss with Black Knight the contents of his consumer report because GIS did not obtain the proper certification from Black Knight that it

18

would provide the appropriate notice to Plaintiff if Black Knight chose to use the contents of his consumer reports as a basis to deny employment; and (4) GIS was unjustly enriched by selling Plaintiff's consumer report to Black Knight when GIS had no statutory basis on which to release the report to Black Knight.

89.     GIS's conduct is precisely the type that Congress sought to prevent—violation of consumer privacy—with the restrictions it has imposed on access to consumers' sensitive, personal information.

90.     Plaintiff and the putative class members therefore suffered a concrete, in-fact injury that is directly traceable to GIS's conduct and that is likely to be redressed by a favorable decision here.

91.     GIS violated Plaintiff's right to privacy by compiling his personal, private and confidential information into a consumer report without a permissible purpose and selling it for a profit to a third party.

92.     Black Knight rejected Plaintiff for employment based in whole or in part on the contents of his consumer report, which GIS provided to Black Knight without a statutory basis for doing so. However, Black Knight never provided Plaintiff with pre-adverse action notice, a copy of his consumer report or summary of rights, each of which is required by the FCRA.

93.     Again, it is not surprising Black Knight failed to satisfy the requirements of § 1681b(b)(3) since Black Knight never certified to GIS that it would comply with § 1681b(b)(3) before obtaining Plaintiff's consumer report.

94.     If Plaintiff had known GIS was furnishing his consumer report to Black Knight without a legal right to do so, Plaintiff would not have permitted GIS to furnish his consumer reports to Black Knight.

95.     If Plaintiff had known GIS was furnishing his consumer report to Black Knight without a legal right to do so, and such consumer report would be the basis for his termination, Plaintiff would not have signed the authorization form provided by Black Knight.

96.     If Plaintiff knew GIS was profiting unlawfully from his consumer report, Plaintiff would not have signed the authorization purporting to permit the compilation of his personal, private, and sensitive information for sale.

## GIS ACTED WILLFULLY

97.     GIS knew or should have known about its legal obligations under the FCRA. These obligations are well established in the statute's plain language, judicial decisions interpreting the Act, and in the Federal Trade Commission's and Consumer Financial Protection Bureau's promulgations.

98.     GIS obtained, or had available, substantial written materials, which apprised it of its duties under the FCRA.

99.     Before CRAs provide consumer reports for employment purposes, they must obtain a written certification that the recipient has (a) provided the consumer with an FCRA-compliant disclosure that a report will be sought; and (b) received that consumer's written authorization.

100.    This requirement has been part of the fabric of the FCRA since Congress enacted it over half a century ago.  GIS has had decades by which to become compliant with this requirement, yet it has not done so.

101.    Discovery will show that GIS has no process or procedure directed to compliance with the FCRA's certification requirement with respect to employers receiving consumer reports

20

for employment purposes through solutions providers like Paycom, despite knowing of its existence.

102.    Despite knowledge of these legal obligations, GIS acted consciously in breaching its known duties and depriving the Plaintiff and putative class members of their rights under the FCRA.

103.    As a result of these FCRA violations, GIS is liable to Plaintiff and to each putative class member for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), for the violations alleged herein, and for attorneys' fees and costs pursuant to § 1681n and § 1681o.

<div align="center"><b>PLAINTIFF'S CONCRETE HARM CAUSED BY BLACK KNIGHT</b></div>

<div align="center"><b><i>Plaintiff's' First Concrete Injury under § 1681b(b)(2)(A)(i): Informational Injury</i></b></div>

104.    Plaintiff suffered a concrete informational injury because Black Knight failed to provide Plaintiff with information to which he was entitled to by statute, namely a stand-alone FCRA disclosure before procuring his consumer report.  Through the FCRA, Congress created a new right – the right to receive the required disclosure as set out in the FCRA, and a new injury – not receiving a stand-alone disclosure.

105.    Pursuant to § 1681b(b)(2), Plaintiff was entitled to receive certain information at a specific time, namely a disclosure that a consumer report may be procured for employment purposes in a document consisting solely of the disclosure.  Such a disclosure was required to be provided to Plaintiff *before* the consumer report was to be procured.  By depriving Plaintiff of this information, in the form and at the time he was entitled to receive it, Black Knight injured Plaintiff and the putative class members he seeks to represent.

<div align="center">21</div>

106.    Black Knight violated the FCRA by procuring consumer reports on Plaintiff and other Background Check Class members without first making proper disclosures in the format required by 15 U.S.C. § 1681b(b)(2)(A)(i). Namely, these disclosures had to be made: (1) before Defendant, Black Knight actually procured consumer reports, and (2) in a stand-alone document, clearly informing Plaintiff and other Background Check Class members that Black Knight might procure a consumer report on each of them for purposes of employment.   The required disclosures were not made, causing Plaintiff an informational injury.

107.    Black Knight's failure to provide Plaintiff and the putative class with a lawful disclosure created a risk of harm that Plaintiff and members of the putative class would be distracted by the extraneous language present in Defendant, Black Knight's unlawful FCRA disclosure.

108.    Black Knight's failure to provide Plaintiff and the putative class with a lawful disclosure created a risk of harm that Plaintiff and members of the putative class would be confused by the extraneous language present in Black Knight's unlawful FCRA disclosure.

109.    Black Knight's failure to provide Plaintiff and the putative class with a lawful disclosure created a risk of harm that Plaintiff and members of the putative class would be misled by the extraneous language contained in Black Knight's unlawful FCRA disclosure.

*Plaintiffs' Second Concrete Injury under § 1681b(b)(2)(A)(i): Invasion of Privacy*

110.    Black Knight invaded Plaintiff's rights to privacy.  Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (*i.e.,* disclosure and authorization) set forth in 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii).

111.    The FCRA created a statutory cause of action akin to invasions of privacy and

22

intrusions upon seclusion, harms recognized as providing the basis for lawsuits under English and American law.  Black Knight invaded Plaintiff's privacy and intruded upon Plaintiff's seclusion by procuring his consumer report and viewing his private and personal information without lawful authorization.

### *Plaintiff's Concrete Injury for Violation of 15 U.S.C. § 1681b(b)(3)(A)*

112.    Plaintiff suffered informational injury as he was deprived information to which he was legally entitled, including notice and a copy of his consumer report, before he was subjected to an adverse employment action based in whole or in part on his consumer report.

113.    Plaintiff suffered informational injury as he was denied access to the contents of his consumer report.

114.    Plaintiff was denied the opportunity to plead his case for employment or otherwise address the contents of his consumer report with Black Knight before it rejected him.

115.    Plaintiff was worried about the contents of his consumer report and how it would affect his prospects for employment with other employers, since he did not know what information was contained in his consumer report or the accuracy of the information being reported about him.

### BLACK KNIGHT ACTED WILLFULLY

116.    Black Knight knew or should have known about its legal obligations under the FCRA. These obligations are well established in the statute's plain language, judicial decisions interpreting the Act, and in the Federal Trade Commission's and Consumer Financial Protection Bureau's promulgations.

117.    Black Knight obtained, or had available, substantial written materials, which apprised it of its duties under the FCRA.

118.     Before employers may obtain consumer reports for employment purposes, they must (a) provide the consumer with an FCRA-compliant disclosure that a report will be sought; and (b) receive that consumer's written authorization to obtain the report.

119.     This requirement has been part of the FCRA for decades. Black Knight has had more-than-ample time by which to become compliant with this requirement, yet it has not done so.

120.     Discovery will show that Black Knight has no process or procedure directed to compliance with the FCRA's certification and authorization requirements with respect to receiving consumer reports for employment purposes through solutions providers like Paycom, despite knowing of the existence of these requirements.

121.     Despite knowledge of these legal obligations, Black Knight acted consciously in breaching its known duties and depriving the Plaintiff and putative class members of their rights under the FCRA.

122.     As a result of these FCRA violations, Black Knight is liable to Plaintiff and to each putative class member for statutory damages from $100 to $1,000 pursuant to 15 U.S.C. § 1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. § 1681n(a)(2), for the violations alleged herein, and for attorneys' fees and costs pursuant to § 1681n and § 1681o.

## CLASS ACTION ALLEGATIONS

### *The Putative Classes*

123.     Plaintiff asserts a claim against GIS on behalf of a "Certification Class," defined as:

> **All employees and job applicants in the United States who were the subject of a consumer report furnished by GIS that was provided without the user's certification of compliance with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. §**

**1681b(b)(3), within five years of the filing of this complaint through the date of final judgment in this action.**

124.    Plaintiff asserts a claim against Black Knight on behalf of a "Background Check

Class," defined as:

> **All employees and job applicants in the United States upon whom Black Knight Security procured a consumer report without first providing a clear and conspicuous disclosure in a document consisting solely of the disclosure, within two years of the filing of this lawsuit through the date of final judgment in this action.**

125.    Plaintiff asserts a claim against Black Knight on behalf of an "Adverse Action

Class," defined as:

> **All employees and job applicants in the United States whom Black Knight Security denied employment based in whole or in part on their consumer reports but to whom Black Knight Security did not provide a copy of their consumer report before taking the adverse action, within five years of the filing of this lawsuit through the date of final judgment in this action.**

126.    This action has been brought and may be maintained as a class action under Pa. R.

Civ. P. 1701 *et. seq.*

### The Requirements of Pa. R. Civ. P. 1702, 1708 and 1709

127.    **Numerosity.** The members of the putative classes are so numerous that joinder of

all class members is impracticable. GIS furnished hundreds of consumer reports to Black Knight

alone, for positions across the United States. GIS regularly compiles consumers' personal,

private and sensitive information into consumer reports for sale to employers. Plaintiff is

informed and believes that during the relevant time period, tens of thousands of employees and

prospective employees, if not hundreds of thousands, satisfy the definition of the putative

Certification Class. Based on the number of putative class members and their geographic

disbursal, joinder is impracticable. The names and addresses of the class members are

identifiable through GIS's records and putative Certification Class members may be notified of

this action by mailed notice. Upon information and belief, Plaintiff believes the putative Background Check and Adverse Action Classes consists of hundreds of consumers that received an unlawful disclosure or were not provided with notice and a copy of their consumer reports before being subjected to an adverse employment action. Their names and addresses will also be contained in GIS's records. In many instances, Class Members are either unaware that claims exist or have sustained individual damages too small to justify the costs of bringing suit separately. When aggregated, however, individual damages are large enough to justify this Class Action.

128.    **Typicality.**  Plaintiff's claims are typical of those of the members of the putative classes. GIS furnishes consumer reports for employment purposes to employers using a uniform, common process. Nothing is different from class member to class member. The FCRA violations suffered by Plaintiff are the same as those suffered by other putative Certification Class members because absent the requisite certifications, GIS did not have a permissible purpose to furnish the consumer reports. Similarly, Plaintiff was provided the same disclosure form as the putative Background Check Class members, and like the putative Adverse Action Class members, was deprived of notice and a copy of his consumer report prior to being subjected to an adverse employment action.

129.    **The Fairness and Efficiency of Litigating as a Class Action.**  Class treatment is also appropriate because questions of law or fact common to the putative classes predominate over any questions affecting only individual members of the putative classes, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. GIS's and Black Knight's conduct stems from common and uniform policies and practices, resulting in common violations of the FCRA. Such common questions include, among

26

others:

    a.  whether GIS furnished consumer reports for employment purposes without the user's certification of compliance with 15 U.S.C. § 1681b(b)(2), before furnishing such reports;

    b.  whether GIS furnished consumer reports for employment purposes without the user's certification of compliance with 15 U.S.C. § 1681b(b)(3), if applicable;

    c.  whether Black Knight failed to provide consumers with a lawful disclosure form prior to procuring consumer reports for employment purposes;

    d.  whether Black Knight failed to provide consumers with notice and a copy of their consumer report before denying them employment based in whole or in part on their consumer reports;

    e.  whether Defendants' violations of the FCRA were willful;

    f.  the proper measure of statutory damages; and

    g.  the proper form of relief.

130.   Members of the putative classes do not have an interest in pursuing separate actions against Defendants, as the amount of each class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants. Moreover, management of this action as a class action will not present any foreseeable difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all claims of all members of the putative classes in a single action, brought in a single forum.

131.   This case is further maintainable as a class action because prosecution of actions by or against individual members of the putative class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for GIS and Black Knight. Further, adjudication of each individual class member's claim as separate action would

potentially be dispositive of the interest of other individuals not a party to such action, thereby impeding their ability to protect their interests.

132.    This case is also maintainable as a class action because GIS and Black Knight acted or refused to act on grounds that apply generally to the putative classes.

133.    Class certification is also appropriate because questions of law and fact common to the putative classes predominate over any questions affecting only individual members of the putative classes, and also because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. GIS's and Black Knight's conduct stems from common and uniform policies and practices, resulting in common violations of the FCRA. Members of the putative classes do not have an interest in pursuing separate actions against GIS or Black Knight, as the amount of each class member's individual claim for damages is small in comparison to the expense and burden of individual prosecution.  Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendants.  Moreover, management of this action as a class action will not present any foreseeable difficulties.   In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all members of the putative classes' claims in a single action, brought in a single forum.

134.    **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the putative classes, and has retained Counsel experienced in complex class action litigation, including nationwide class actions pressing claims under the FCRA.

135.    Plaintiff is cognizant of and determined to faithfully discharge his fiduciary duties to the Class Members in each Class that he seeks to represent as Class Representative.  Plaintiff will vigorously pursue each Class's claims. Plaintiff is aware that it cannot settle this Class

Action without prior Court approval. Representative Plaintiff has and/or can acquire the financial resources to litigate this Class Action.

136.     Undersigned counsel are experienced in litigating Class Actions and have handled many such actions in the state and federal courts for and on behalf of other consumers.  Counsel is handling this Class Action on a contingent fee basis and will receive compensation for professional services rendered in this Class Action only as awarded by this Court.

## CLAIMS FOR RELIEF

### COUNT I
**Failure to Obtain Certification Prior to Furnishing a
Consumer Report for Employment Purposes in Violation of 15 U.S.C. § 1681b(b)(1)(A)
(Against GIS)**

137.     Plaintiff re-alleges paragraphs 1 through 136 of the Complaint, as if fully set forth herein.

138.     GIS willfully violated 15 U.S.C. § 1681b(b)(1)(A) because it provided consumer reports about Plaintiff and class members, which were used for employment purposes, without the user's certification of compliance with the disclosure, authorization and notification requirements set forth in 15 U.S.C. § 1681b(b)(2) and § 1681b(b)(3).

139.     GIS invaded Plaintiff's privacy by compiling Plaintiff's personal, private and sensitive information into a consumer report for employment purposes, and furnishing said consumer report without a permissible purpose.

140.     GIS caused Plaintiff injury because the report GIS furnished was used, in whole or in part, as the basis for an adverse employment action.

141.     GIS caused Plaintiff injury because GIS permitted the user of their consumer reports to circumvent the disclosure, authorization and notification requirements of the FCRA when using consumer reports for employment purposes by failing to require Black Knight to

certify compliance therewith.

142.    The forgoing violations were willful. At the time GIS violated 15 U.S.C. § 1681b(b)(1)(A), GIS knew it was required to obtain a certification of compliance with 15 U.S.C. § 1681b(b)(2) from Black Knight before furnishing Black Knight with consumer reports for employment purposes and certification with the notification requirements of 15 U.S.C. § 1681b(b)(3), if applicable.   GIS's willful conduct is also reflected by, among other things, the following facts:

       a.   GIS knew of potential FCRA liability;

       b.   GIS is a consumer reporting agency with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

       c.   The FCRA's certification requirement is clearly spelled out in the plain language of the statute;

       d.   GIS knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

       e.   GIS voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

143.    Plaintiff and the Certification Class are entitled to statutory damages of between $100 and $1,000 for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

144.    Plaintiff and the Certification Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative Certification Class pray for relief as follows, in the form of an order:

       a.   determining that this action may proceed as a class action;

b.  designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

c.  requiring notice to the putative class at GIS's expense;

d.  finding that GIS committed multiple, separate violations of the FCRA;

e.  finding that GIS acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

f.  awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

g.  awarding reasonable attorneys' fees and costs as provided by the FCRA.

## COUNT II
### Failure to Make Proper Disclosure in Violation of FCRA 15 U.S.C. § 1681b(b)(2)(A)(i) (Against Black Knight)

145.   Plaintiff re-alleges paragraphs 1 through 136 of the Complaint, as if fully set forth herein.

146.   The FCRA disclosure Black Knight required the Background Check Class to complete as a condition of its employment with Black Knight does not satisfy the disclosure requirements of 15 U.S.C. § 1681b(b)(2)(A)(i) because Black Knight failed to provide a stand-alone document as to the consumer report information being obtained and utilized for employment purposes.

147.   Black Knight invaded Plaintiff's right to privacy.  Under the FCRA, "a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless" it complies with the statutory requirements (*i.e.*, disclosure and authorization) set forth in 15 U.S.C. §§ 1681b(b)(2)(A)(i)-(ii).

148.   Black Knight's willful conduct is also reflected by, among other things, the following facts:

31

    a.   Black Knight knew of potential FCRA liability;

    b.   Black Knight is a user of consumer reports with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

    c.   The FCRA's certification requirement is clearly spelled out in the plain language of the statute;

    d.   Black Knight knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

    e.   Black Knight voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

149.    Plaintiff and the Background Check Class are entitled to statutory damages of between $100 and $1,000 for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages under 15 U.S.C. § 1681n(a)(2).

150.    Plaintiff and the Background Check Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative Background Check Class pray for relief as follows, in the form of an order:

    a.   determining that this action may proceed as a class action;

    b.   designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

    c.   requiring notice to the putative class at Black Knight's expense;

    d.   finding that Black Knight committed multiple, separate violations of the FCRA;

    e.   finding that Black Knight acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

    f.   awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

g. awarding reasonable attorneys' fees and costs as provided by the FCRA.

## COUNT III
### Failure to Provide Adverse Action Notice in
### Violation of FCRA 15 U.S.C. § 1681b(b)(3)(A)
### (Against Black Knight Security)

151. Plaintiff re-alleges paragraphs 1 through 136 of the Complaint, as if fully set forth herein.

152. Black Knight used a consumer report to take adverse employment action against Plaintiff and other members of the Adverse Action Class.

153. Black Knight violated the FCRA by failing to provide Plaintiff and other Adverse Action Class members with pre-adverse action notice, a summary of their FCRA rights and a copy of their consumer report before taking such adverse action. *See* 15 U.S.C. § 1681b(b)(3)(A).

154. Black Knight's willful conduct is also reflected by, among other things, the following facts:

   a. Black Knight knew of potential FCRA liability;

   b. Black Knight is a user of consumer reports with access to legal advice through its own general counsel's office and outside employment counsel, and there is not contemporaneous evidence that it determined that its conduct was lawful;

   c. The FCRA's certification requirement is clearly spelled out in the plain language of the statute;

   d. Black Knight knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; and

   e. Black Knight voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

155. Moreover, at the time Black Knight failed to follow 15 U.S.C. § 1681b(b)(3)(A) a

33

plethora of FTC opinions and case law existed and served as notice to users of consumer reports for employment purposes.

156.    Plaintiff and the Adverse Action Class are entitled to statutory damages of $100 and not more than $1,000 for each and every one of these violations under 15 U.S.C. § 1681n(a)(1)(A), in addition to punitive damages as the Court may allow under 15 U.S.C. § 1681n(a)(2).

157.    Plaintiff and the Adverse Action Class are further entitled to recover their costs and attorneys' fees, in accordance with 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff, on behalf of himself and the putative Background Check Class pray for relief as follows, in the form of an order:

a.   determining that this action may proceed as a class action;

b.   designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the putative class;

c.   requiring notice to the putative class at Black Knight's expense;

d.   finding that Black Knight committed multiple, separate violations of the FCRA;

e.   finding that Black Knight acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

f.   awarding statutory damages as provided by the FCRA, including punitive damages, to members of the putative class; and

g.   awarding reasonable attorneys' fees and costs as provided by the FCRA.

34

## DEMAND FOR JURY TRIAL

Plaintiff and the putative classes demand a trial by jury.

Dated this 24th day of February, 2021.

<div style="margin-left: 40%;">

_____

**ANGELI MURTHY, ESQ.**
(PA Bar No. 93699)
**MORGAN & MORGAN, P.A.**
8151 Peters Rd., 4th Floor
Plantation, Florida 33324
Telephone: (954) 318-0268
Facsimile:  (954) 327-3016
amurthy@forthepeople.com

**MARC R. EDELMAN, ESQ.**
*(pro hac vice forthcoming)*
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, FL 33602
Telephone: 813-577-4722
Fax:  813-257-0572
medelman@forthepeople.com

**LEONARD A. BENNETT, ESQ.**
*(pro hac vice forthcoming)*
**CRAIG C. MARCHIANDO, ESQ.**
*(pro hac vice forthcoming)*
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel: (757) 930-3660
Fax: (757) 257-3450
len@clalegal.com
craig@clalegal.com

***Attorneys for Plaintiff***

</div>

35